LOREN M. LAMBERT, No. 5101
Arrow Legal Solutions Group, PC
Attorney for Plaintiff
266 East 7200 South
Midvale, Utah 84047
Telephone (801) 568-0041
llambert@arrowlegalsolutions.com

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| JUAN GONZALEZ,<br><br>Plaintiff,<br><br>vs.<br><br>EAGLE MOUNTAIN PRESS, LLC, and, in his official capacity, JOE OSTMEIER<br><br>Defendant. | **COMPLAINT AND JURY REQUEST**<br><br><br>Case No. 2:16-cv-01255-DBP<br><br>Judge: Dustin B. Pead |

Plaintiff brings this action against Defendant, Eagle Mountain Press, LLC, for discriminating against him in violation of Title VII by subjecting him to harassment because of his race (Hispanic), national origin and color and for a retaliatory termination. In support thereof, the Plaintiffs state as follows:

**NATURE OF THE CASE**

1. This is an action for the recovery of money damages and injunctive relief caused by the Defendant's unlawful employment practices in violation of Title VII. Eagle

Mountain Press, LLC ("Eagle") and Joe Ostmeier, in his official capacity, terminated Plaintiff based on several complaints he made that he was subjected to a hostile work environment and harassment due to his national origin, race and color.

## PARTIES, JURISDICTION AND VENUE

2. At the time he worked at and was terminated from Eagle, Juan Gonzalez ("Plaintiff") was and is a resident of Salt Lake County.

3. Upon information and belief, Defendant Eagle Mountain Press, LLC is a Utah-based company in Salt Lake County, Utah. Also Joe Ostmeier, is a resident of Salt Lake County, who is sued in his official capacity as the owner and Plaintiff's supervisor at Eagle. Unless otherwise stated, both are referred to collectively in the singular as "Defendant."

4. Since all causes of action occurred in Salt Lake County and all parties reside in Salt Lake County, this court has jurisdiction over the actions.

5. Because all of the evidence and potential witnesses reside in Salt Lake County, venue is proper in this district.

## FACTUAL BACKGROUND

**Statutory Background**

6. Defendant discriminated against Plaintiff in violation of Title VII by subjecting him to a hostile work environment and to harassment because of his national origin, race (Hispanic) and color.

7. Plaintiff was harassed and treated differently by his supervisors but mainly a Caucasian supervisor nicknamed Jimbo who questioned Plaintiff's nationality; made comments regarding his dark skin and colored eyes; and treated him and other Hispanic employees in a demeaning manner.

8. The harassment occurred approximately every day that Plaintiff worked and took on the following form:

    a. Plaintiff's supervisor Ryan Kimber and his immediate supervisor Jimbo would require Plaintiff to leave his work area exceptionally clean at the end of each work shift. Other similarly situated employees were not required to clean their work areas when they would end their shifts, leaving Plaintiff with the burden of cleaning up their area at the beginning of a rotating work shift.

    b. Jimbo, on a weekly basis, would refer to the color of Plaintiff's eyes and skin and would indicate that because of that he knew that a 'gringo' was the Plaintiff's real dad. Insisting that a 'gringo' visited the Plaintiff's mother's home country and had sexual relations with her. Jimbo would repeatedly ask him what he

was doing in America, criticizing Plaintiff for working in America for American currency when his native country also used American currency. Jimbo would also often swear in Spanish to Plaintiff and other employees using phrases such as 'pinche maricon' (fucking gay), 'chupe me pene' (suck my dick), 'pinche puto' (fucking bitch), and would frequently use the F-word with him. Such as, 'motherfucker,' mother fucking bitch,' and 'fuck you.' Also laughing at him for the design on Plaintiff's shorts, calling him a 'faggot.' When Jimbo would pass Plaintiff in the workplace he would mumble under his breath to Plaintiff, "bullshit, every f-ing day," additionally often putting his arm up next to Plaintiff's arm, reminding him of his "gringo" dad by pointing out the similarity in their skin tone. Jimbo would often say "suck my f-ing dick" when Plaintiff would speak up against the way he was being treated by Jimbo or when he would threaten to complain to Jimbo's supervisor. Additionally saying, 'You and Ryan can suck my dick.' Also, when world events would occur involving Latin American countries, like when a soccer match occurred between the United States and El Salvador's national team ending in El Salvador's defeat, Jimbo would take the opportunity to use that as an example to indicate that Hispanics were inferior to Caucasian Americans. Lastly, Jimbo would often give Plaintiff the "bird." Jimbo acknowledged on several

occasions that he could get into trouble if he were to continue mocking Plaintiff's nationality.

9. Plaintiff and other employees have heard Jimbo question out loud why non-English speakers were working at Eagle Mountain Press.

10. Plaintiff and others noticed that Jimbo would also put his arm around Hispanics to indicate that his white skin was superior to theirs.

11. Jimbo has also harassed employees by telling them that they were gay in Spanish. This also was reported to Ryan but the behavior continued.

12. On September, 13th, 2013 Plaintiff complained to his supervisor, Ryan Kimber, about the above noted behavior but Ryan ignored him. Ryan told the Plaintiff that Jimbo was just playing around and didn't mean anything by it. Additionally excusing Jimbo's behavior by attributing it to 'problems going on at home.' Ryan warned Plaintiff and others that he would fire them if they complained to Ryan's supervisor Defendant Joe Ostmeier. Ryan and the employer knew or should have been aware of the above-described behavior because it was pervasive and because other employees have also complained about it.

13. In fact other employees also complained to Ryan and Joe about Jimbo's behavior as noted above but nothing was done.

14. The behavior was affecting Plaintiff's well-being and his ability to do his job. Also, Plaintiff was constantly nervous for his job, believing that the company was looking for any reason to show cause for firing him.

15. On Saturday, September 21, 2013 Plaintiff called Joe Ostmeier to discuss the harassment. Joe scheduled the meeting for Monday evening, September 23, 2013. Plaintiff told Joe about Jimbo's wrongful behavior as noted above and about Ryan's failure to take any action to put an end to the behavior.

16. When Plaintiff would complain, instead of allowing him to provide complete information, Defendant and its agents would invariably turn the conversation around and wrongly claim that Plaintiff was the one who had a problem.

17. It is a fact that Supervisor Ryan has admitted that Jimbo had a problem and offered to take disciplinary action against him. Additionally, Jimbo had been fired for sexual harassment, yet was hired within a year later of being fired.

18 . Plaintiff made a complaint with the Utah Labor Commission, his claim was referred on to the EEOC, the EEOC entered a determination in his favor. Specifically the EEOC found:

> This determination is final. When the Commission finds that violations have occurred, it attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, I invite the parties to join with the Commission

> in reaching a just resolution of this matter. Disclosure of information obtained by the Commission during the conciliation process will be made only in accordance with the confidentiality provisions of Title VII and Commission Regulations.
> This determination does not conclude the processing of this charge. The Commission will begin conciliation efforts to resolve all matters where there is reason to believe that violations have occurred. A Commission representative will contact each party in the near future to begin conciliation.

19. Plaintiff tried to resolve the matter through mediation but the Defendant was unwilling to do so. The EEOC issued to Plaintiff a Notice of Right to Sue on September 14th, 2016. Exhibit A.

## I. Cause of Action
## Race, National Origin, Color Discrimination, Harassment
## & Hostile Work Environment.

20. Plaintiff asserts that his workplace, from the time he commenced employment until the time he was fired, on a daily basis was permeated with harassment and discrimination due to his color, race and national origin. He is of dark brown skin, is from Mexico, and is Hispanic. The harassment and discrimination in the creation of a hostile work environment occurred in the manner set forth above. He was also paid less than others similarly situated employees not of his protected class due to his race, color and national origin. The unlawful behavior occurred from the time he was hired on September 1st, 2008 until he was terminated on January 18th, 2013. He was also discharged due to his color, race and national origin and due to his protected activities.

## II. Cause of Action
### Retaliatory Disciplinary Action and Termination.

21. Also Other employees were complaining about Jimbo's harassing, discriminatory and hostile behavior and made Plaintiff aware of this behavior. Consistent with company policy and as allowed by law, Plaintiff engaged in the protected activity of encouraging them to come forward to speak with management about Jimbo and brought them with him to speak with management about Jimbo.

22. Instead of thanking these employees for coming forward, Defendant and its agents labeled this behavior as "rallying," against Jimbo and as engaging in "abuse of process."

23. Plaintiff asserts that when he complained about the discrimination, harassment and creation of a hostile work environment, and engaged in the protected activity as noted herein, adverse information was placed in his employment record and he was discharged in retaliation for engaging in protected activities in the manner as noted above.

24. After the Plaintiff was fired from Eagle Mountain Press, he had a challenging time finding a new job. Primarily because he had worked at Eagle Mountain Press for four years and was left with a bad reference for being fired. It would later come up that the companies he applied for, would not hire him to due his only reference, which had

negative things to say about the Plaintiff. After a few months of being unemployed, the Plaintiff began working for a staffing company in January 2014 called 'SmartStaffing.' In September of 2014, Plaintiff also started to work for another staffing company called 'Nexeo.' Plaintiff would work back and forth between both staffing companies until September of 2015 when Diamond Rental finally hired him after a year of working for them as a Nexeo employee. Currently, Plaintiff is still employed by Diamond Rental.

## **PROVISO**

25. This Complaint was not drafted by Plaintiff, but was drafted by his attorney after speaking with Plaintiff and reviewing all of the evidence that Plaintiff was able to obtain. Although Plaintiff and counsel are confident that the core allegations of his complaint are valid, the exact details on what occurred to Plaintiff, and who specifically caused Plaintiff harm, may vary from the alleged facts once information is exchanged through the mandatory court discovery process. In conclusion, this Complaint is not Plaintiff's statement, it is a compilation of information regarding what Plaintiff believes, to the best of their and their counsel's knowledge, and information regarding what the facts will show. The Complaint should be read as a whole with all allegations linked to each other and the amounts pled herein are not to be meant to limit the jury's discretion to award more or less damages based upon the facts of this case alone. I have considered all

the evidence obtained during the investigation and find that there is reasonable cause to believe that there is a violation of Title VII in that Defendant subjected Charging Party and a class of individuals to harassment because of their color and national origin, (Hispanic).

## PRAYER FOR RELIEF

WHEREFORE the Plaintiffs request:

1. That Defendants be found to have committed all the torts indicated above.

2. That Defendant pay the Plaintiff approximately $50,000 and lost wages.

3. That Defendant pay the Plaintiff approximately 30,000 to $150,000 in general damages as a jury determines is appropriate.

4. That Defendant be found to have acted with gross reckless indifference or malice and pay the Plaintiff $50,000 in punitive damages.

5. For attorney's fees, expert witness fees, and costs incurred in pursuing this action.

6. That he be re-employed at Eagle for an amount that commiserate with having never been fired from Eagle.

7. And for such other and further relief as the Court deems just and appropriate.

DATED this 13 day of December, 2016.

                                      ARROW LEGAL SOLUTIONS GROUP, PC

                                      /s/Loren M. Lambert
                                      Loren M. Lambert
                                      Attorney for Plaintiff